Rory T. Kay, Esq. (NSBN 12416)
Tara U. Teegarden, Esq. (NSBN 15344)
McDONALD CARANO LLP
2300 West Sahara Avenue, Suite 1200
Las Vegas, Nevada 89102
Telephone: (702) 873-4100
Facsimile: (702) 873-9966
rkay@mcdonaldcarano.com
tteegarden@mcdonaldcarano.com

*Attorneys for Defendant*
*The Retail Equation, Inc.*

# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| ALFONSO ELENES CONTRERAS, | Case No. 2:21-cv-00691-APG-VCF |
| Plaintiff, | **THE RETAIL EQUATION, INC.'S MOTION TO DISMISS COMPLAINT** |
| v. | |
| THE RETAIL EQUATION, INC., | |
| Defendant. | |

Defendant, The Retail Equation, Inc. ("TRE"), by and through its undersigned counsel and pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure and LR 7-2, hereby files and serves upon Plaintiff, Alfonso Elenes Contreras ("Plaintiff"), this Motion to Dismiss and Incorporated Memorandum of Law. In support thereof, TRE states the following:

## INTRODUCTION

Plaintiff brings this case against TRE for alleged violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.* ("FCRA"). However, Plaintiff's Compliant lacks any allegations of concrete harm and, as a result, Plaintiff lacks Article III standing to bring any claim against TRE under the FCRA. Furthermore, *even if* Plaintiff did have Article III standing to pursue some type of claim against TRE (he does not), his Complaint fails to allege sufficient facts to support

his allegation that TRE operates as a consumer reporting agency ("CRA") under the FCRA. The failure to allege facts to support this threshold element of his FCRA claim provides an independent reason for dismissal. Finally, because Plaintiff cannot state a claim under the FCRA against TRE, his willfulness claim necessarily fails. Dismissal is required.

By way of background, TRE is a business that collects data from a retailer regarding customer's return activity. TRE processes that data and sends that data back to the same retailer who provided it. TRE does not share data across retailers and does not make any of the data available to consumer reporting agencies or other similarly situated organizations like potential creditors, employers, insurers, government agencies or landlords. Instead, this is a simple service provider relationship where Plaintiff assists a retailer in processing and analyzing its own data.

This case involves Plaintiff's receipt of a disclosure from TRE showing Plaintiff's return transaction history between Plaintiff and The Home Depot. After receiving the disclosure, Plaintiff sent a dispute to TRE regarding information in his disclosure he claimed was "outdated." Plaintiff claims TRE did not conduct a reasonable reinvestigation of his dispute. Importantly, the Complaint includes no allegations of third-party disclosure of information, let alone a disclosure of any inaccurate information. Furthermore, there are no allegations of harm Plaintiff claims to have suffered from the allegedly inadequate reinvestigation by TRE. Instead, the harm Plaintiff claims to have suffered is actually the purported risk of future harm that would flow from the disclosure of information to a third party – which is not alleged here and cannot be alleged here based on TRE's business model. Thus, under the United States Supreme Court's recent decision in *Ramirez v. Trans Union,* dismissal is appropriate.

**FACTUAL BACKGROUND**

Plaintiff claims that he received a "credit file disclosure" from TRE on or around August 11, 2020. (ECF No. 1 at ¶ 9.) Plaintiff claims that the file disclosure "reported" derogatory information that Plaintiff returned purchased products back to Home Depot in November 2011 ("2011 Home Depot Return Item"). (*Id.* at ¶ 10.) Plaintiff then claims that TRE's "report" is

designed to paint Plaintiff in a negative light. (*Id.* at ¶11.)[1] Plaintiff claims the information in the file disclosure antedates the report by more than seven years and should not have been included. (*Id.* at ¶ 14.)

Plaintiff further claims that he mailed a dispute letter to TRE requesting that the 2011 Home Depot Return Item be removed. (*Id.* at ¶ 15.) Plaintiff claims that he received a response from TRE but that the response failed to refer to the 2011 Home Depot Return Item and failed to include a description of what action TRE took with respect to the 2011 Home Depot Return Item. (*Id.* at ¶ 17.) Plaintiff alleges TRE failed to conduct a reasonable reinvestigation in violation of section 1681i of the FCRA. Plaintiff claims that as a result of TRE's alleged failure to correct its inaccurate and negative "reporting," Plaintiff has suffered actual damages including "fear of credit denials, out-of-pocket expenses in challenging Defendant's wrongful representations, damage to his credit worthiness, and emotional distress." (*Id.* at ¶ 25.)

## LEGAL STANDARD

### A.  Legal standards under Fed. R. Civ. P. 12(b)(1).

A motion to dismiss under Rule 12(b)(1) of the Federal Rules of Civil Procedure challenges subject matter jurisdiction. "Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute. . . ." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (quotations omitted). Article III of the U.S. Constitution limits the judicial power of the federal courts to actual "Cases" and "Controversies." U.S. Const. art. III, § 2, cl. 1. To invoke this power, a litigant must have standing, *Hollingsworth v. Perry*, 570 U.S. 693, 704 (2013), and the plaintiff bears the burden of proving such standing. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). "Standing to sue is a doctrine rooted in the

---

[1] There is no "report" at issue here. A consumer report or credit report refers to the document provided by CRAs to third party creditors, insurers, or employers. *Id.*; see also 15 U.S.C. § 1681a(d). While TRE denies that it is a CRA or that it is governed by the FCRA, upon an individual's request, TRE does provide that individual a courtesy copy of the data it maintains on that individual on behalf of its retailer customer. That is how Plaintiff obtained a copy of his return activity with The Home Depot.

traditional understanding of a case or controversy." *Spokeo, Inc. v. Robins,* 136 S. Ct. 1540, 1547 (2016). "The doctrine limits the category of litigants empowered to maintain a lawsuit in federal court to seek redress for a legal wrong." *Id.*

The "irreducible constitutional minimum" of standing consists of three elements. *Lujan*, 504 U.S. at 560. The plaintiff must prove (1) an injury in fact (2) fairly traceable to the challenged conduct (3) that is likely to be "redressed by a favorable judicial decision." *Hollingsworth*, 570 U.S. at 704. Relevant here, an injury in fact requires "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560 (internal quotation marks and citations omitted); *Spokeo*, 136 S. Ct. at 1545 ("[T]he injury-in-fact requirement requires a plaintiff to allege an injury that is both concrete *and* particularized"). "[A] 'concrete' injury must be '*de facto*'; that is, it must actually exist" in a "'real,' and not 'abstract'" sense. *Spokeo*, 136 S. Ct. at 1548.

"Injury in fact is a constitutional requirement, and it is settled that Congress cannot erase Article III's standing requirements by statutorily granting the right to sue to a plaintiff who would not otherwise have standing." *Id.* at 1547–48 (citation and internal quotation marks omitted); *see Gladstone, Realtors v. Bellwood*, 441 U.S. 91, 100 (1979) ("In no event . . . may Congress abrogate the Art. III minima"). In other words, "Article III standing requires a concrete injury even in the context of a statutory violation." *Spokeo*, 136 S. Ct. at 1549.

**B.    Legal standards under Fed. R. Civ. P. 12(b)(6).**

A Rule 12(b)(6) motion to dismiss tests whether the complaint "state[s] a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In deciding a Rule 12(b)(6) motion to dismiss, the Court must accept all factual allegations in a complaint as true and take them in the light most favorable to plaintiff, *Erickson v. Pardus*, 551 U.S. 89 (2007), but mere "'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action[]'" are insufficient.

*Henry v. Dovenmuehle Mortgage*, No. 2:19-cv-00360-MMD-NJK, 2020 U.S. Dist. LEXIS 46529, at *5-6 (D. Nev. Mar. 18, 2020) (citations omitted). The complaint must also "contain either direct or inferential allegations concerning 'all the material elements necessary to sustain recovery under some viable legal theory.'" *Id.* (citation omitted).

## ARGUMENT

### A. Under *Ramirez,* Plaintiff lacks Article III standing because he has failed to allege a concrete injury.

Plaintiff has failed to sufficiently allege that he has suffered a concrete harm as the result of any action or inaction taken by TRE. *All* Plaintiff has alleged is that he suffered "fear of credit denials, out-of-pocket expenses in challenging Defendant's wrongful representations, damage to his credit worthiness, and emotional distress." This is not enough under *Ramirez* and dismissal is required.

#### 1. *The Court's decision in Ramirez.*

On Friday, June 25, 2021, the Supreme Court of the United States decided *TransUnion, LLC v. Ramirez*, No. 20-297 (U.S. June 25, 2021). As stated succinctly by the Court: "No concrete harm, no standing." *Id*. at 1, 27. *Ramirez* significantly clarifies the law of Article III standing and, as a result, a plaintiff can no longer premise his standing, or his claim to damages, on mere allegations that they are at *risk* of suffering a harm in the future.

*Ramirez* involved violations of the FCRA, including a claim that TransUnion improperly included in certain consumers' credit files and consumer reports an alert indicating the consumer might be on the U.S. Treasury Department's Office of Foreign Assets Control's ("OFAC") list of Specially Designated Nationals prohibited from doing business in the United States—essentially labelling them as potential "terrorists, drug traffickers, or other serious criminals." *Ramirez*, slip op. at 3.

Prior to trial, the parties stipulated that TransUnion had disseminated to third parties misleading credit reports for 1,853 of the 8,185 class members; the credit files of remaining 6,332 class members *were not disseminated to third parties*. *Id*. at 5-6. A jury found in favor of Ramirez

and the class, awarding more than $60 million in statutory damages. *Id*. at 6. On appeal, the Ninth Circuit affirmed but reduced the total class damages award to roughly $40 million. *Id*.

The Supreme Court granted certiorari and reversed, holding that the 6,332 class members whose internal TransUnion credit files were not disseminated to third parties did not suffer a concrete harm and therefore lacked Article III standing, while the 1,853 class members (including Ramirez) whose credit reports were disseminated did have standing. *Id*. at 24.

*Ramirez* largely "focuses on the Article III requirement that [a] plaintiff's injury in fact be 'concrete'—that is, "'real, and not abstract.'" *Id*. at 8 (quoting *Spokeo, Inc. v. Robins*, 578 U. S. 330, 340 (2016) (internal quotation marks omitted)). The Court explained that "traditional tangible harms" are concrete, and so "[i]f a defendant has caused physical or monetary injury to the plaintiff, the plaintiff has suffered a concrete injury in fact under Article III." *Id*. Certain "intangible" harms *can* be concrete, the Court explained, if they have "a close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts." *Id*. at 12.

The Court first determined that "the mere existence of a misleading OFAC alert in a consumer's internal credit file" was not a concrete harm, because there is "no historical or common-law analog where the mere existence of inaccurate information, absent dissemination, amounts to concrete injury." *Id*. at 18-19. Analogizing to defamation, the Court noted that "[a] letter that is not sent does not harm anyone, no matter how insulting the letter is." *Id*. at 19.

The Court next addressed Plaintiffs' "separate argument based on an asserted risk of future harm." *Id.* at 20. Plaintiffs asserted that the existence of TransUnion's misleading credit file "exposed them to a material risk that the information would be disseminated in the future to third parties and thereby cause them harm." *Id*. The Court adopted TransUnion's "persuasive argument" that, in a *damages* suit, "the mere risk of future harm, standing alone, cannot qualify as a concrete harm." *Id*. at 20-21.[2] Rather, a risk of harm can only give standing to pursue damages

---

[2] The Court recognized a possible exception where "the exposure to the risk of future harm itself causes a separate concrete harm," *e.g.*, where "a plaintiff's knowledge that he or she is exposed to a risk of future physical, monetary, or reputational harm could cause its own current emotional or psychological harm." Slip op. at 21 & n.7. But, as in *Ramirez*, "[t]he plaintiff[ ]here [has] not relied on such a theory of Article III harm." *Id.*

where "the risk materializes in the form of actual harm," in which case "the harm itself, and not the pre-existing risk, will constitute a basis for the person's injury and for damages." *Id.* at 21. Thus, "[i]f the risk of future harm does not materialize, then the individual cannot establish a concrete harm sufficient for standing." *Id*. The Court relied on the following illustration:

> Suppose that a woman drives home from work a quarter mile ahead of a reckless driver who is dangerously swerving across lanes. The reckless driver has exposed the woman to a risk of future harm, but the risk does not materialize and the woman makes it home safely. As counsel for TransUnion stated, that would ordinarily be cause for celebration, not a lawsuit. But if the reckless driver crashes into the woman's car, the situation would be different, and (assuming a cause of action) the woman could sue the driver for damages.

*Id.* (citation omitted). The Court applied this reasoning to hold that the 6,332 class members whose credit reports were not disseminated lacked standing because they "did not demonstrate that the risk of future harm materialized—that is, that the inaccurate OFAC alerts in their internal TransUnion credit files were ever provided to third parties or caused a denial of credit." *Id.* at 22.

The Court alternatively held that, "[e]ven apart from that fundamental problem with their argument based on the risk of future harm, the plaintiffs did not factually establish a sufficient risk of future harm to support Article III standing," because they did "[n]ot demonstrate a sufficient likelihood that their individual credit information would be requested by third-party businesses and provided by TransUnion during the relevant time period." *Id.* at 22-23.

### 2. *The alleged harms Plaintiff claims to have suffered are not concrete.*

Here, like *Ramirez,* the harm Plaintiff has alleged is insufficient to confer Article III standing because none of the alleged harms are concrete. First, Plaintiff alleges that he suffered "fear of credit denials." (ECF No. 1 at ¶ 25.) This is not enough under *Ramirez's* clear mandate: "the mere risk of future harm, standing alone, cannot qualify as a concrete harm." *Ramirez* at 20-21. Furthermore, there are no facts under which Plaintiff will ever be able to allege any type of credit denial based on information TRE maintains. First, TRE is not alleged to – and, in fact, does not – return any *credit* information to anyone. Indeed, Plaintiff's Complaint alleges that the

information TRE "reported" on Plaintiff was Plaintiff's own return activity with The Home Depot—to The Home Depot. (Compl., ¶ 10 ("TRE reported derogatory information that Plaintiff *returned purchased products back to Home Depot* on November 28, 2011 without a receipt . . . .")). Thus, there are simply no facts to support that there even can be any risk of any "credit" information being disclosed here. Second, it necessarily follows that there can be no risk of any "credit denial" when no "credit" information is being provided by TRE. To the extent Plaintiff has any concerns about a future "credit denial," those concerns cannot be linked to TRE nor could any denial result from information provided by TRE because TRE does not provide credit information or other consumer information to third parties. Despite Plaintiff's bare allegation that such return information is "derogatory," he does not allege that it is inaccurate or misleading. (ECF No. 1 at ¶ 10). And as described at the outset, TRE only discloses a retailers' data to that retailer.

Likewise, Plaintiff's claim that he suffered out-of-pocket expenses in challenging Defendant's wrongful "representations" fails because Plaintiff has failed to allege that TRE disseminated any information to any third party. Here, there are no "representations" made by TRE to anyone. Instead, there is only a disclosure of information to Plaintiff himself. The Complaint is devoid of allegations that *any information* was provided to a third party. Under *Ramirez,* Plaintiff's alleged out-of-pocket expense "harm" is insufficient absent dissemination of the information to a third party especially where there is "no historical or common-law analog where the mere existence of inaccurate information, ***absent dissemination***, amounts to concrete injury." *Id*. at 18-19 (emphasis added).

Furthermore, Plaintiff claims he suffered damage to his credit worthiness and emotional distress. Yet, as discussed above, no information was disclosed to a third party. Absent disclosure to a third party, there can be no negative impact on Plaintiff's "credit worthiness." As discussed above, the information TRE maintains has nothing to do with credit and is only shared with the retailer who first provided it to TRE.

Here, Plaintiff's allegations of harm are nothing more than conclusory "fill in the blank" damages allegations that are included in most run of the mill FCRA Complaints. This is the exact type of claim that the Supreme Court has found to be insufficient for purposes of Article III standing and, therefore, the Complaint should be dismissed.

### B.   Plaintiff has failed to sufficiently allege that TRE is a CRA.

In this case, even if Plaintiff had Article III standing to pursue his claims (he does not), his claims against TRE would still fail because Plaintiff has failed to allege that TRE is a CRA under the FCRA. To qualify as a CRA under the FCRA, an entity must regularly furnish "consumer reports to third parties." 15 U.S.C. § 1681a(f). Plaintiff's Complaint fails to allege any facts to suggest that TRE operates as a CRA. Instead, Plaintiff's Complaint simply parrots the statutory definition of a CRA by alleging that TRE "regularly assembles and/or evaluates consumer credit information for the purpose of furnishing consumer credit reports to third parties, and uses interstate commerce to prepare and/or furnish the reports." (ECF No. 1 at ¶ 7.) These conclusory allegations are not based on any *facts*. *See Iqbal,* 556 U.S. at 678 ("A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"); *Moss v. U.S. Secret Serv.,* 572 F.3d 962, 969 (allegations that "do nothing more than state a legal conclusion—even if that conclusion is cast in the form of a factual allegation" are not considered for purposes of a motion to dismiss). Instead, they are the exact type of "formulaic recitation" of the elements of a claim that is prohibited by *Iqbal.* Thus, the claims against TRE should also be dismissed for the independent reason that Plaintiff has failed to plead any facts that TRE operates as a CRA.

### C.   Plaintiff has failed to allege a willful violation of the FCRA.

Finally, Plaintiff cannot even show that the FCRA applies to TRE, let alone that TRE willfully violated the FCRA. To show willfulness under the FCRA, a consumer must show that a defendant knowingly or recklessly violated the FCRA. *Shaw v. Experian Info. Sols., Inc.,* 891 F.3d 749, 760 (9th Cir. 2018). A court may find that a defendant has behaved recklessly when the defendant's "action both is 'a violation under a reasonable reading of the statute's terms' and

'shows that the company ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless.'" *Id.* (internal citations omitted).

Plaintiff's willfulness allegations, like the majority of allegations in his Complaint, are conclusory, alleging only that TRE's "failure to correct its inaccurate and negative reporting debt in light of its knowledge of the actual error was willful." (ECF No. 1 at ¶ 24.) This is plainly insufficient to plead willfulness. *See Jenkins v. AmeriCredit Fin. Svcs., Inc.,* No. 14-cv-5687, 2017 U.S. Dist. LEXIS 57560, at *24 (E.D.N.Y. Feb. 14, 2017) (finding that the "mere failure to correct a plaintiff's inaccurate credit information, even after notification of the inaccuracy does not constitute a willful failure to comply with the FCRA") (emphasis in original). First, as discussed throughout this brief, while Plaintiff uses the word "report," there *is no reporting activity* alleged. Second, Plaintiff's allegations refer to the negative reporting "debt" (Compl. ¶ 24) – further indicates that Plaintiff cannot even allege what exactly he claims TRE is reporting. Indeed, Plaintiff fails to plead any facts as to what TRE "reported" or *how* TRE acted with knowledge or intent to mislead or violate the law. *Wilson v. Equifax Info. Servs.,* No. 2:19-cv-00055-RFB-NJK, 2020 U.S. Dist. LEXIS 92661, at *20-22 (D. Nev. May 27, 2020) ("The Court agrees with Defendant that Plaintiff's allegations as to willfulness are conclusory and therefore that Plaintiff has failed to adequately plead willfulness.").

## CONCLUSION

For the foregoing reasons, TRE respectfully requests that this Court enter an order dismissing Plaintiff's Complaint in its entirety with prejudice.

Respectfully submitted this 6th day of July, 2021.

        McDONALD CARANO LLP

        By: */s/ Rory T. Kay*
           Rory T. Kay, Esq. (NSBN 12416)
           Tara U. Teegarden, Esq. (NSBN 15344)
           2300 West Sahara Avenue, Suite 1200
           Las Vegas, Nevada 89102
           rkay@mcdonaldcarano.com
           tteegarden@mcdonaldcarano.com

        *Attorneys for Defendant The Retail Equation, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 6th day of July 2021, a copy of the foregoing **THE RETAIL EQUATION, INC.'S MOTION TO DISMISS COMPLAINT** was filed electronically through the Court's CM/ECF system, which causes service upon all counsel registered thereon.

/s/ *CaraMia Gerard*
An Employee of McDonald Carano LLP