David Krieger, Esq.
Nevada Bar No. 9086
Shawn Miller, Esq.
Nevada Bar No. 7825
KRIEGER LAW GROUP, LLC
2850 W. Horizon Ridge Parkway
Suite 200
Henderson, Nevada 89052
Phone: (702) 848-3855
Email: dkrieger@kriegerlawgroup.com
Email: smiller@kriegerlawgroup.com

Attorney for Plaintiff
*Alfonso Elenes Contreras*

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| ALFONSO ELENES CONTRERAS,<br><br>Plaintiff,<br><br>vs.<br><br>THE RETAIL EQUATION, INC,<br><br>Defendant. | Case No.: 2:21-cv-00691-APG-VCF<br><br>**FIRST AMENDED COMPLAINT FOR DAMAGES PURSUANT TO THE FAIR CREDIT REPORTING ACT, 15 U.S.C. § 1681, ET SEQ.**<br><br>**JURY TRIAL DEMANDED** |

ALFONSO ELENES CONTRERAS, Plaintiff, by and through her attorneys of record, hereby submits this First Amended Complaint and alleges against Defendant The Retail Equation, Inc. as follows:

1

## INTRODUCTION

1. The United States Congress has found the banking system is dependent upon fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence, which is essential to the continued functioning of the banking system. Congress enacted the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.* ("FCRA"), to ensure fair and accurate reporting, promote efficiency in the banking system, and protect consumer privacy. The FCRA seeks to ensure consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy because consumer reporting agencies have assumed such a vital role in assembling and evaluating consumer credit and other information on consumers. The FCRA also imposes duties on the sources that provide credit information to credit reporting agencies, called "furnishers."

2. Through a tightly wound set of procedural protections, the FCRA protects consumers from the material risk of harms that otherwise flow from inaccurate reporting. Thus, through the FCRA, Congress struck a balance between the credit industry's desire to base credit decisions on accurate information, and consumers' substantive right to protection from damage to reputation, shame, mortification, and

the emotional distress that naturally follows from inaccurate reporting of a consumer's fidelity to his or her financial obligations.

3. Alfonso Elenes Contreras ("Plaintiff"), by Plaintiff's attorneys, brings this action against The Retail Equation, Inc ("TRE" or "Defendant") for violations of the FCRA, as set forth below.

## JURISDICTION AND VENUE

4. This Court has federal question jurisdiction because this case arises out of violations of the FCRA. 15 U.S.C. § 1681 *et seq.*; 28 U.S.C. § 1331; *Smith v. Community Lending, Inc.*, 773 F.Supp.2d 941, 946 (D. Nev. 2011).

5. Venue is proper in the United States District Court for the District of Nevada pursuant to 28 U.S.C. § 1391(b) because Plaintiff is a resident of Clark County, Nevada and because Defendant is subject to personal jurisdiction in Clark County, Nevada; conducts business in Clark County, Nevada; and the events giving rise to this action occurred in Clark County, Nevada.

## PARTIES

6. Plaintiff is a natural person residing in the County of Clark, State of Nevada. In addition, Plaintiff is a "consumer" as that term is defined by 15 U.S.C. § 1681a(c).

7. Plaintiff is entitled to the protections of the Fair Credit Reporting Act (FCRA). 15 U.S.C. §1681 et seq.

8. TRE is a Delaware corporation and wholly owned subsidiary of Appriss Inc., and regularly conducts business within the State of Nevada.

9. Unless otherwise indicated, the use of Defendant's name in this Complaint includes all agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers of Defendant.

### TRE's Data Collection, Sharing and Use

10. TRE uses statistical modeling and analytics and collect personal information and data about consumers, like Plaintiff, in an effort to create reports and risk factors to retail merchants (e.g., Home Depot) about whether it detects fraudulent and abusive behaviors when a consumer returns merchandise to a retail merchant for credit, refund or exchange.

11. Based on its statistical modeling, analytics, and collected personal information, TRE issues reports to retail merchants about whether to warn or deny consumer merchandise returns.

12. Upon information and belief, TRE holds and/or uses multiple trademarks and patents to covertly obtain consumer information and process merchandise returns.

13. These trademarks and patents include specifications, information and drawings that detail the method and manner in which TRE processes merchandise

4

return evaluations and the method and manner in which TRE collects and shares customer information, including the use of predictive algorithms and statistical models to evaluate *inter alia*, consumer fraud and organized crime within retail.

14. Without the knowledge, authorization or consent of consumers, TRE collects a wide array of confidential consumer information, including consumer identification information, such as all unique identification information contained on or within a consumer's driver's license, government issued ID, passport, including but not limited to a consumer's name, date of birth, race, sex, photograph, and complete address. TRE also collects a wide array of information and data about a consumers shopping habits and commercial activity.

15. When a consumer attempts to make a return or exchange, the retail merchant swipes or scans the customer's driver's license, government issued ID or passport along with the sales receipt, and then without the consent, knowledge or authorization of its consumer transfers the information to TRE, thereby identifying the consumer, the consumer's personal identifying information, and data about the unique purchase, return and exchange behavior.

16. Based on the information in TRE's filings with the Patent and Trademark Office (or those of its parent company, Appriss), TRE uses not just data related to a particular consumer, but also "transaction data collected at points of return from other customers thought to be related to this customer by home, address, family

name, or other connecting data." Thus, for example, if TRE believes (rightly or wrongly) that one of the people in your social network is a fraudster, TRE may label you as a likely fraudster as well.

17. TRE also considers information about other customers that happen to be in the same retail merchant location during the time of the requested return transaction. Thus, for example, if TRE believes (rightly or wrongly) that another customer at the retail merchant's location is a fraudster, TRE may label you as a likely fraudster as well.

18. TRE then uses the data collected to identify the consumer, use its algorithms to analyze the data in combination with other information it has collected about that consumer from other retail merchants utilizing TRE's services and generating a "risk score" for each consumer attempting to return or exchange merchandise.

19. The risk score is TRE's assessment of the likelihood the return or exchange consumer is committing fraud, or other organized crime within retail.

20. Then using the consumer's "risk score" as a pretext, TRE notifies the retail merchant that the attempted return or exchange should be warned or denied as a consequence of suspected "fraudulent and abusive" behavior by the consumer, implicitly labeling the consumer a fraudster.

21. Risk scores identifying consumers as fraudsters occur even when the return or exchange is valid and there is no criminal or improper conduct by a consumer.

22. There is no advance notice to consumers of TRE's involvement in the retail return transaction; consumers are entirely unaware that they are submitting to this surreptitious process of judgment based on TRE's analysis of all the information that its massive data mining efforts have yielded; and when TRE determines that the retail merchant should reject an attempted return, TRE makes no efforts to verify with the customer the actual circumstances of the return or the accuracy of the data on which the rejection is based.

## GENERAL ALLEGATIONS

23. TRE is a "consumer reporting agency" as that term is defined by 15 U.S.C. § 1681a(f).

24. Under the FCRA a "consumer reporting agency" is defined as "any person which, for monetary fees, dues or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties. . . ." 15 U.S.C. §1681a(f).

25. TRE is a consumer reporting agency under the FCRA because, for monetary fees from retail merchants, it regularly engages in the practice of

assembling or evaluating information on consumers for the purpose of furnishing consumer reports to third parties.

26. The Consumer Financial Protection Bureau ("CFPB"), the agency in the United States responsible for consumer protections in the financial sector, identifies TRE as the only a consumer reporting agency identified in the retail sector.

27. Under the FCRA, a "consumer report" is defined as "any written, oral or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for--(A) credit or insurance to be used primarily for personal, family or household purposes; (B) employment purposes; or (C) any other purpose authorized under section 1681b of this title."   15 U.S.C. §1681a(d)(1).

28. On or about August 11, 2020, Plaintiff received a credit file disclosure from TRE which reported inaccurate, incorrect or misleading information regarding Plaintiff and Plaintiff's credit.

29. Specifically, TRE reported derogatory information that Plaintiff returned purchased products back to Home Depot on November 28, 2011 without a receipt, as shown below:

8

| Tx #: | 6610823-563-THD | Store Name: | Charleston Blvd | Tx Type: | Return | Receipt: | | No |
|---|---|---|---|---|---|---|---|---|
| Store #: | 3303 | Store Address: | | Net Amt: | ($13.91) | | | |
| Date: | 11/26/2011 1:58 PM | | 1401 S Lamb Blvd | Return Amt: | $12.87 | | | |
| Result: | Approved | | Las Vegas, NV 89104 | Return Qty: | 1 | | | |

| SKU | Return Reason | Receipt | Receipt Date | Original Store # | Original Tx. # | Original Reg. # | Qty. | Total |
|---|---|---|---|---|---|---|---|---|
| 764676 | Not Available | No | | | | | 1 | ($12.87) |

30. TRE communicated with Home Depot and supplied Home Depot with TRE's risk factor report, which constitutes information bearing on Plaintiff's creditworthiness, credit standing, credit capacity, character, general reputation, personal characteristics or mode of living, that was used or expected to be used, in whole or in part, to determine whether Plaintiff's merchandise return to Home Depot should be denied.

### TRE MISREPORTED CREDIT INFORMATION

31. TRE's report is designed to paint Plaintiff in a negative light, making it appear Plaintiff is engaging in some sort of nefarious scheme by returning a purchased item to Home Depot without a receipt, as if Plaintiff was a fraudster or engaged in organized crime.  There is no other reason to report such information.

32. The FCRA expressly prohibits reporting adverse items of information which antedate the report by more than seven (7) years.  15 U.S.C. § 1681c(a)(5).

33. TRE's Home Depot return information antedates the report by nearly nine (9) years, making TRE's Home Depot information obsolete and TRE should have purged the Home Depot information from Plaintiff's credit report years ago.

34. Accordingly, on or about December 14, 2020, pursuant to 15 U.S.C. § 1681i(a)(2), Plaintiff notified TRE, in writing, of the incorrect, inaccurate or misleading Home Depot information it was reporting.

35. Specifically, Plaintiff mailed a dispute letter, first class U.S. Mail, to TRE ("Dispute Letter"), requesting that the above inaccurate, incorrect or misleading information be removed and deleted. In pertinent part, the Dispute Letter read as follows:

> The following adverse return is more than seven (7) years old and are therefore beyond the time limit that adverse information may be reported in my consumer file. Accordingly, please delete the following "obsolete" information, which should have aged off my consumer file as required under consumer reporting obligations and law and is therefore disputed:
>
> - Home Depot in the amount of $12.87 dated 11/28/2011

36. Upon receiving Plaintiff's Dispute Letter, TRE was required to conduct an investigation into the credit disputes pursuant to 15 U.S.C. §1681i, including timely notifying Home Depot of Plaintiff's credit dispute, and then send Plaintiff a reinvestigation report, detailing the results of TRE's investigation.

37. On or about November 11, 2020, Plaintiff received a reinvestigation from TRE. However, the reinvestigation made no reference to the obsolete Home Depot account at all nor a description of what action, if any, TRE had taken with regard to the Home Depot account.

38. A reasonable investigation by TRE would have shown the disputed Home Depot return was an obsolete item and explained that it has been removed or deleted from Plaintiff's credit file pursuant to the FCRA's statutory requirements.

### FIRST CAUSE OF ACTION
### VIOLATION OF THE FAIR CREDIT REPORTING ACT
### 15 U.S.C. § 1681 *ET SEQ.* (FCRA)

39. Plaintiff incorporates by reference all the above paragraphs of this Complaint as though fully stated herein.

40. Defendant failed to conduct a reasonable investigation as required by 15 U.S.C. § 1681i(a).

41. Defendant failed to review all relevant information provided by Plaintiff in the Dispute Letter, as required by and in violation of 15 U.S.C. § 1681i(a).

42. Upon receipt of Plaintiff's dispute, Defendant failed to conduct an investigation with respect to the disputed information as required by 15 U.S.C. § 1681i(a).

43. Despite Plaintiff's continued efforts to correct Defendant's erroneous and negative reporting in writing, Defendant neglected, refused, or failed to do so.

44. Defendant's failure to correct its inaccurate and negative reporting debt in light of its knowledge of the actual error was willful. Plaintiff is, accordingly, eligible for statutory damages.

45. Also as a result of Defendant's failure to correct its inaccurate and negative reporting, Plaintiff has suffered actual damages, including without limitation fear of credit denials, out-of-pocket expenses in challenging Defendant's wrongful representations, damage to his creditworthiness, emotional distress, lost sleep and headaches.

46. The foregoing acts and omissions constitute numerous and multiple willful, reckless, or negligent violations of the FCRA, including but not limited to each and every one of the above-cited provisions of the FCRA, 15 U.S.C. § 1681.

47. As a result of each and every willful violation of the FCRA, Plaintiff is entitled to actual damages as the Court may allow pursuant to 15 U.S.C. § 1681n(a)(1); statutory damages pursuant to 15 U.S.C. § 1681n(a)(1); punitive damages as the Court may allow pursuant to 15 U.S.C. § 1681n(a)(2); and reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1681n(a)(3) from Defendant.

48. As a result of each and every negligent noncompliance of the FCRA, Plaintiff is entitled to actual damages as the Court may allow pursuant to 15 U.S.C. § 1681o(a)(1); and reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1681o(a)(2) from Defendant.

**PRAYER FOR RELIEF**

Plaintiff respectfully requests the Court grant Plaintiff the following relief against Defendant:

**FIRST CAUSE OF ACTION**
**VIOLATION OF THE FAIR CREDIT REPORTING ACT**
**15 U.S.C. § 1681 ET SEQ. (FCRA)**

- actual damages pursuant to 15 U.S.C. § 1681n(a)(1);

- statutory damages pursuant to 15 U.S.C. § 1681n(a)(1);

- punitive damages as the Court may allow pursuant to 15 U.S.C. § 1681n(a)(2);

- costs of litigation and reasonable attorney's fees, pursuant to 15 U.S.C. § 1681n(a)(3), and 15 U.S.C. § 1681(o)(a)(1) against Defendant for each incident of negligent noncompliance of the FCRA; and

- any other relief the Court may deem just and proper.

///

///

///

///

**TRIAL BY JURY**

Pursuant to the Seventh Amendment to the Constitution of the United States of America, Plaintiff is entitled to, and demands, a trial by jury.

Dated: August 3, 2021

/s/ Shawn W. Miller            .
Shawn Miller, Esq.
Nevada Bar No. 7825
KRIEGER LAW GROUP, LLC
2850 W. Horizon Ridge Parkway
Suite 200
Henderson, Nevada 89052
Phone: (702) 848-3855
Email: smiller@kriegerlawgroup.com
Counsel for Plaintiff